UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

UNITED STATES OF AMERICA,

Plaintiff,

v.

MICHAEL JOSHUA BURCIAGA,

Defendant.

Case No. 3:20-cr-00060-MMD-CLB-1

ORDER

## I. SUMMARY

The jury found Defendant Michael Joshua Burciaga guilty on three counts involving first degree murder within Indian Country (on the Pyramid Lake Paiute Indian Reservation), violations of laws protecting unborn children, and domestic assault by a habitual offender for stabbing his pregnant girlfriend, Amanda Davis, to death, also causing the death of her unborn child. (ECF No. 229.) Defendant filed a motion for new trial (ECF No. 230 ("Motion")) based on the government's failure to disclose key details from two minor witnesses' testimonies and their grandmother's (Ms. Davis' mother) trial testimony about fetal movement going to causation as to Count Two.[1] The Court held a hearing on the Motion on September 14, 2023 ("the Hearing") and provided its oral ruling denying the Motion. (ECF No. 243.) As the Court indicated it would do at the Hearing, this order further explains the Court's rulings.

## II. DISCUSSION

Defendant argues the government failed to disclose exculpatory and impeachment information that was revealed for the first time during trial in violation of its disclosure obligations under either *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (and its progeny), Fed.

---

[1]The government filed a response (ECF No. 233), and Defendant replied (ECF No. 238).

R. Crim. P. 16, or the Jencks Act. (ECF No. 230.) Under *Brady,* a prosecutor must disclose evidence that is "material either to guilt or to punishment." *Brady*, 373 U.S. at 87. In *Giglio v. United States*, the Supreme Court extended *Brady*'s disclosure requirement to evidence that may impeach a government witness. *See Giglio,* 405 U.S. 150 (1972). The Jencks Act requires the government to turn over statements of government witnesses once they have testified on direct examination, provides for in camera review of witness statements under certain circumstances not pertinent here, and provides for sanctions in the event of the government's noncompliance. *See* 18 U.S.C. § 3500. Rule 16(a) imposes disclosure obligations on the government. In reply, Defendant specifically focuses on Rule 16(a)(1)(E). (ECF No. 238 at 10.) "Subject to the exemptions described in Rule 16(a)(2), Rule 16(a)(1)(E) requires that, upon a defendant's request, the government must 'disclose any documents or other objects within its possession, custody or control' that are 'material to preparing the defense."' *United States v. Lucas*, 841 F.3d 796, 804 (9th Cir. 2016) (quoting *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013)).

Defendant more specifically contends he learned of the following evidence for the first time during trial when the involved witness testified, but should have learned about it pretrial in government disclosures: (1) A.D.'s testimony that there was a red knife among the various knives Defendant used to stab Davis, and that Defendant used A.D.'s phone to track his mother; (2) D.D.'s testimony that she picked up the blue knife and was going to stab Defendant but she was scared and did not; and (3) Jolyne Sander's testimony that the night before the killing, she touched her daughter's (Davis') stomach and felt the baby move. (ECF No. 230 at 4-8.) Defendant objected to these pieces of evidence at trial, insisting repeatedly that the government violated their disclosure obligations under *Brady* and *Giglio* by failing to disclose the substance of this testimony pretrial. Government counsel responded during trial that they did not learn of the challenged evidence until each witness testified at trial, with the exception of Sander's testimony. The Court overruled Defendant's objections. With the benefit of partial trial transcripts, Defendant's Motion reasserts and crystalizes his prior arguments. The Court will address the

challenged evidence presented through A.D. and D.D.'s testimony collectively, followed by the challenged evidence presented through Sander's testimony.

**A. A.D. and D.D.'s Testimony**

The gist of the government's response to the Motion as to this testimony is that the government did not breach any of its disclosure obligations because government counsel did not learn of the challenged testimony before A.D. and D.D. testified. (ECF No. 233 at 8-12.) But A.D. testified that he believed he told government counsel the day before he testified about the red knife. (Jury Trial Day 4 at 37:9-13.) D.D. similarly testified she told government counsel and the case agent about her picking up the blue knife in one of their meetings before trial. (Jury Trial Day 5 at 57.) However, government counsel represented to the Court during trial and in the government's response that these two witnesses did not share the pertinent information in any of their pretrial meetings.[2] Despite these discrepancies, the Court has no reason to question government counsel's representations that the witnesses did not share the challenged information pretrial before they testified.[3] Indeed, during the trial, when the issue of D.D. touching the blue knife came up, Assistant United States Attorney Penelope Brady represented to the court that D.D. "has never told me" that she touched the blue knife. (Jury Trial Day 5, transcript of

---

[2]The government's response summarizes the various meetings with the minor witnesses and their counsel. (ECF No. 233 at 2-5.) The government represented that counsel asked the minor witnesses about the night of the murder in only two of these meetings. (*Id.* at 4-5.)

[3]Defendant contends in his reply brief that government counsel has made inconsistent representations. In particular, Defendant points to the government's response to Defendant's motion in limine seeking to determine competency where government counsel represented that they had talked to the minor children recently and had no concerns about their competency. (ECF No. 238 at 3.) But the Court does not find the representation that government counsel did not have concerns about the minors' competency inconsistent with their representation that during the May 10, 2023, meeting with the minors, D.D. went through a basic recitation of the killing, A.D. became emotional after basic, introductory questions were asked of him, and he said he did not want to talk about the murder. (ECF No. 233 at 4.) A.D.'s reaction does not show that his competency was an issue. Moreover, the competency issue raised in the motion in limine was based on the children not having an independent or sufficient recollection of the incident. (ECF No. 140 at 2-5.) And the government's description of the May 10, 2023, meeting in their response to the Motion does not show that the children did not have a sufficient recollection. There is a distinction between not remembering and not wanting to talk about the event.

D.D. at 61:16-63:16.) The Court accordingly finds, consistent with its rulings during the course of trial, that the government was not aware of the challenged information before A.D. and D.D. testified, and therefore did not violate any obligation to disclose it.

**B. Sander's Testimony**

Government counsel's decision to withhold disclosure of Sander's challenged testimony requires more context to highlight the Court's concerns. Government counsel specifically argues in response to the Motion that Sander's testimony about the fetal movement falls within the category of inculpatory evidence that does not trigger their obligation to disclose under *Brady*/*Giglio*, and because the evidence was oral and not written, the government had no duty to disclose under Fed. R. Crim P. 16. While the government is technically correct, the involved prosecutors' decision to intentionally not take note of this material evidence is concerning, particularly when viewed in the context of this case.

Causation as to Count Two—whether the unborn baby was killed with the killing of the mother—was a significant issue both pretrial and at trial because of the evidence relating to Davis's high risk pregnancy. Specifically, Davis' unborn baby had been diagnosed with trisomy 18. The jury heard extensive testimony about the risk of such a dismal diagnosis—that more than 50% of such babies will be born stillborn, or pass away before birth. Those who survive birth are unlikely to live much longer. The jury also heard testimony that Davis last saw her treating physician, Dr. Twedt, on December 9, 2020. Dr. Twedt testified that during that appointment, the baby was alive, and she discussed counting the baby's kicks with Davis. So there was direct evidence that the baby was alive six days before the killing. Further, the parties' expert witnesses offered differing testimony about the cause of the baby's death. The government's expert, Dr. Knight, testified that the baby was dead at autopsy although she was not aware of the baby's trisomy 18 diagnosis at the time. Defendant's expert witness, Dr. Simms, testified that the baby's cause of death could not be determined without more investigation such as examining cellular death, though he also acknowledged that no baby could survive the

death of their mother. Thus, Defendant's expert suggested that Davis' killing may not have been the cause of the unborn baby's death. And indeed, defense counsel devoted a significant portion of his opening statement to Defendant's lack of causation argument as to Count Two.

Then there was Sander's testimony on direct examination that the night before the killing, on December 13, 2020, while Davis and her children were gathered at Sander's house for their family Christmas tradition (making gingerbread houses), she touched Davis's stomach and felt the baby move.[4] Sanders also testified on cross examination that she had met with government counsel a few times, but she had not shared this evidence with them in any of their prior meetings.

In response to the Motion, government counsel represented that Sander shared this information at one of their meetings with her, though the two involved prosecutors, Ms. Brady and Assistant United States Attorney Megan Rachow, could not recall which meeting. The government also provided Defendant with a form 302 of an April 26, 2023 meeting, where Sander shared that the last in-person conversation she had with Davis was when they made gingerbread houses. (ECF No. 242.) This 302 did not include Sander's statement about fetal movement. (*Id.*) In response to the Court's questions during the Hearing, Ms. Brady represented that she has no recollection of Sander making this statement during the April 26 meeting, and that Ms. Rachow believes Sander's statement was not made at that meeting either. Both counsels' practice was not to record or ask the case agent to record inculpatory evidence, which explains why Sander's statement about fetal movement was not recorded in any format, including in a form 302.

[4]The Court cited to Sander's testimony as evidence that a rational juror could find sufficient causation as to Count Two in denying Defendant's Rule 29 motion at the close of the government's case. (ECF No. 200 (minutes of proceedings).) That said, the Court also notes that Dr. Twedt's testimony may have lessened the weight of Sander's testimony, but that is not the point. In particular, Dr. Twedt was asked about detecting fetal movement by touching a mother's stomach and she responded that a person's body mass index can make it difficult to detect a baby's movement and that sometimes mothers can be incorrect when they believe they detect movement. The Court would nonetheless still expect a reasonable juror to credit Sander's statement that she felt the baby moving the night before the killing as evidence of causation.

As Ms. Brady explained, she only ensures exculpatory or impeachment evidence is recorded, not inculpatory evidence because otherwise she would be recording an impractically large amount of information. And if she took more voluminous notes when she met pretrial with government witnesses, the government may have to disclose them under either the Jenks Act or Rule 16.

In sum, and contrary to Sander's testimony on cross examination, government counsel represented that she had told them at some point pretrial that she had felt the baby kicking, but they had not written that statement down or disclosed it to the defense pretrial—because they were not required to.

The Court agrees with the government that existing law does not appear to have compelled the government to include this detail in their pretrial disclosures to the defense. The statement does not fall within the ambit of *Brady* or *Giglio* because it is inculpatory, not exculpatory, and is not impeachment evidence as to Sander.[5] *See, e.g.*, *Amado v. Gonzalez*, 758 F.3d 1119, 1138 (9th Cir. 2014) ("The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching[.]") (citation omitted). Moreover, Sander's statement about feeling the baby kicking does not appear to fall within the ambit of Fed. R. Crim. P. 16(a)(1)(E) because Ms. Sander's unrecorded statement to the government is not a document or tangible object. *See id.* (referring to "books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items"). Defendant cites several cases in his reply brief (ECF No. 238 at 7-11) to argue that the government was required to disclose Sander's statement that she felt the baby kicking under Rule 16, but each of the cited portions of those cases addresses documents, not statements not recorded in a document. *See Lucas*, 841 F.3d at 804 (discussing documents); *Hernandez-Meza*, 720 F.3d at 768-69

[5]Defense counsel argued at the Hearing that the fact Sander testified she did not tell government counsel she felt the baby kicking pretrial was impeachment because government counsel said she did, but that is at best tangential to Motion, in which Defendant argues the statement the government should have disclosed is that Sander felt the baby kicking. (ECF No. 230 at 10-11.) And Sander's statement that she felt the baby kicking does not itself speak to her credibility.

(discussing a naturalization certificate); *United States v. Soto-Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016) (discussing "a right to discovery of documents"); *see also* Wright and Miller, *Federal Practice and Procedure § 254 Discovery by the Defendant—Documents and Tangible Objects*, 2 Fed. Prac. & Proc. Crim. § 254 (4th ed., April 2023 Update) ("Rule 16(a)(1)(E) provides for disclosure of documents and tangible objects."). The government's decision not to write down Sanders' statement regarding the baby kicking accordingly appears to insulate it from Rule 16(a)(1)(E)'s disclosure requirement. The Court therefore cannot grant Defendant's Motion on this basis.

That said, it "behooves the government to interpret the disclosure requirement broadly and turn over whatever evidence it has pertaining to the case." *Soto-Zuniga*, 837 F.3d at 1003 (quoting *Hernandez-Meza*, 720 F.3d at 768). The government did not interpret its disclosure obligations broadly here. It chose to withhold a material piece of evidence. Evidence about fetal movement given the state of the evidence relating to causation described above is no doubt material to Count Two. And aside from withholding powerful evidence of causation, the fact that an in-person conversation between Sander and Davis was recorded in a form 302 but the material inculpatory evidence about Sander noting fetal movement—no doubt a touching, powerful moment evidencing the baby's health—was intentionally not recorded is, as Defendant argues, misleading at best. Deciding not to include this key detail in interview notes suggests gamesmanship that ignores the special role of the prosecutor in our federal criminal justice system. *See Amado*, 758 F.3d at 1133-34 ("The prosecution is trusted to turn over evidence to the defense because its interest 'is not that it shall win a case, but that justice shall be done."') (citation omitted).

In addition, Assistant United States Attorney Ric Casper conceded at the Hearing that had government counsel written the statement down, the government would have had to disclose the document on which the statement was written under Rule 16(a)(1)(E). This perverse incentive—the less you include in notes, the less you have to turn over to the defense—should be discouraged. It also seems arbitrary that there is no disclosure

requirement until a case agent or prosecutor writes the witness' statement down. This practice of not recording inculpatory, material evidence to avoid disclosure, particularly in the context of this case, certainly causes the Court to consider whether court intervention during discovery to require disclosure under these circumstances would provide balance and alleviate concerns that the government may conduct trial by ambush. *See, e.g.*, *United States v. Nobles*, 422 U.S. 225, 230-31 (1975) (explaining that the Court has inherent power to order discovery that goes beyond what Rule 16 requires); *see also United States v. Powell*, 587 F.2d 443, 447 (9th Cir. 1978) (referring disdainfully to "trial by ambush" on the government's part in deciding to grant a defendant's motion for new trial based on the government's decision not to disclose that a witness was outside of the country).

**III. CONCLUSION**

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Defendant's motion for a new trial (ECF No. 230) is denied.

DATED THIS 22nd Day of September 2023.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE